1
2
3
4
5
6
7



8           UNITED STATES DISTRICT COURT
9           CENTRAL DISTRICT OF CALIFORNIA
10

11  CINDY ANN RANDLE,                 ) Case No. EDCV 14-322 RNB
                                      )
12              Plaintiff,            )
                                      ) ORDER AFFIRMING DECISION OF
13       vs.                          ) COMMISSIONER
                                      )
14  CAROLYN W. COLVIN, Acting         )
    Commissioner of Social Security,  )
15                                    )
                Defendant.            )
16                                    )
17  _____)

18

19      The sole disputed issue listed in the Joint Stipulation is whether the
20 Administrative Law Judge ("ALJ") properly considered whether plaintiff met or
21 equaled the requirements of Listing 12.05C (Intellectual disability). (See Jt Stip at
22 3.) The Court now rules as follows with respect to that issue.[1]

23

24      [1]   As the Court advised the parties in its Case Management Order, the
25 decision in this case is being made on the basis of the pleadings, the administrative
26 record ("AR"), and the Joint Stipulation ("Jt Stip") filed by the parties. In accordance
   with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined
27 which party is entitled to judgment under the standards set forth in 42 U.S.C. §
28 405(g).

1

In 20 C.F.R. Part 404, Subpart P, Appendix 1, the Commissioner has set forth certain impairments that are presumed to be of sufficient severity to prevent the performance of work. See 20 C.F.R. §§ 404.1525(a), 416.925(a). At Step Three of the Commissioner's five-step disability analysis, the ALJ must determine whether a claimant's impairment or combination of impairments meets or equals a listed impairment. See Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). If a claimant has an impairment that meets or equals a listed impairment, disability is presumed and benefits are awarded. See 20 C.F.R. §§ 404.1520(d), 416.920(d); Barker v. Secretary of Health & Human Servs., 882 F.2d 1474, 1477 (9th Cir. 1989).

The claimant has the burden of proving disability, including disability based on the Listing of Impairments. See Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Vick v. Comm'r of Social Sec. Admin., 57 F. Supp. 2d 1077, 1087 (D. Or. 1999). The mere diagnosis of a listed condition does not establish that a claimant "meets" the Listings. See Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990). "For a claimant to show that his impairment matches a listing, it must meet **all** of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990); see also 20 C.F.R. §§ 404.1525(d), 416.925(d). Thus, the ALJ must find that the claimant has an impairment that corresponds in diagnosis, severity and duration to a listed impairment.[2] To "equal" a listed impairment, a plaintiff "must establish symptoms, signs, and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment 'most like' the claimant's impairment." Tackett,

---

[2] Unless the particular listing otherwise specifies, the durational requirement is 12 continuous months. See 20 C.F.R. §§ 404.1525(c)(4); 416.925(c)(4).

180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526).

"A claimant satisfies Listing 12.05C, demonstrating 'intellectual disability' and ending the five-step inquiry, if he can show: (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid IQ score of 60 to 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation." See Kennedy v. Colvin, 738 F.3d 1172, 1173 (9th Cir. 2013) (citing 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C).

A. Background

During the initial hearing on May 30, 2012, plaintiff testified that she finished high school but underwent special education for a learning disability. (See AR 90, 103.) She also testified that she cannot read or write but affirmed that she has a driver's license. (See AR 99, 102.) She also testified that she had worked as a caregiver for elderly patients and had received unemployment benefits for a period during which she had applied, with help from a friend, for jobs at places such as Walmart and KFC. (See AR 91, 102.) Near the end of the hearing, plaintiff's counsel argued that plaintiff had satisfied the requirements of Listing 12.05C. (See AR 117-18.) The ALJ continued the hearing, kept the record open for an MRI of plaintiff's neck, and ordered plaintiff to undergo two consultative examinations, including a psychological examination. (See AR 118-19; see also AR 478.)

During the psychological examination on July 10, 2012, Dr. Douglas Larson administered a series of tests and found that plaintiff, who was then 43 years old, had a full-scale IQ score of 60. (See AR 478.)[3] However, Dr. Larson also opined that plaintiff "is not mentally retarded" and observed that plaintiff's symptoms from her

---

[3] Dr. Larson also found that plaintiff had a verbal IQ score of 61, a perceptual IQ score of 73, a working memory IQ score of 66, and a processing speed IQ score of 60. (See AR 478.)

learning disability and other mental impairments appeared to "wax and wane." (See AR 478, 479.)

During the supplemental hearing on November 26, 2012, the ALJ asked plaintiff's counsel (who was different from her counsel at the initial hearing) whether he believed the record was complete. (See AR 124.) Plaintiff's counsel affirmed that it was. (See id.)

B. Analysis

The Commissioner apparently is not disputing that plaintiff's impairment satisfied the second and third requirements of Listing 12.05C because she had a valid IQ score of 60 to 70, as well as a physical or other mental impairment imposing an additional and significant work related limitation. (See Jt Stip at 11-16.)[4] Rather, the Commissioner only is disputing whether plaintiff's impairment satisfied the first requirement of Listing 12.05C: "deficits in adaptive functioning initially manifested before age 22" (i.e., manifested during the "developmental period"). As to that requirement, the ALJ specifically found "no evidence in the record of 'deficits in adaptive functioning' manifested during the developmental period, as required by 12.05C." (See AR 13.)

The Court concurs with this finding. "Evidence *from* the developmental period

---

[4] Specifically, in addition to her IQ score, plaintiff had several physical and mental impairments, apart from her decreased intellectual functioning, that the ALJ found were "severe" because they significantly limited her ability to do basic work activities (see AR 12). See also 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00A (an additional impairment satisfies third requirement of Listing 12.05C when it "significantly limits your physical or mental ability to do basic work activities, i.e., is a 'severe' impairment"); Fanning v. Bowen, 827 F.2d 631, 633 (9th Cir. 1987) (holding that an impairment imposes a significant work-related limitation of function under Listing 12.05C when its effect on a claimant's ability to perform basic activities is more than slight or minimal).

is not required in order to establish that the impairment began before the developmental period; rather the agency may use its judgment when current evidence allows it to infer when the impairment began." See Hernandez v. Astrue, 380 Fed. Appx. 699, 700 (9th Cir. 2010) (emphasis in original) (now citable for its persuasive value per Ninth Circuit Rule 36-3); Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50753 (Aug. 21, 2000) (same). Here, notwithstanding plaintiff's IQ score at the age of 43, the record reflects that plaintiff had finished high school and had a driver's license; and that she previously had engaged in substantial gainful activity, had received unemployment benefits, and had applied for work. (See AR 90, 91, 102.) The record also reflects that Dr. Larson not only declined to diagnose plaintiff with mental retardation, but noted that her symptoms appeared to "wax and wane." (See AR 478, 479.) Although plaintiff testified that she underwent special education before graduating from high school (see AR 90, 103), no evidence in the record corroborated this testimony. The record also contains no opinion from a treating or examining physician suggesting that plaintiff's mental impairment met or equaled the requirements of Listing 12.05C. Accordingly, the Court finds that substantial evidence supported the ALJ's listings determination because the ALJ could reasonably infer from the current evidence that plaintiff did not have deficits in adaptive functioning that began during the developmental period. See Foster v. Halter, 279 F.3d 348, 355 (6th Cir. 2001) (claimant failed to show deficits in adaptive functioning before age 22 in part where primary supporting evidence was IQ score at 42 years of age); see also Talavera v. Astrue, 697 F.3d 145, 153 (2d Cir. 2012) (noting that a claimant does not suffer from deficits in adaptive functioning if she has the "ability to cope with the challenges of ordinary everyday life"); Miles v. Barnhart, 374 F.3d 694, 699-700 (8th Cir. 2004) (ALJ did not err in finding that claimant's education and vocational history were "not consistent with the types of deficits of adaptive functioning contemplated by Listing 12.05," despite recent IQ score of 59); cf. Hernandez, 380 Fed. Appx. at 700 (finding

evidence from which ALJ could infer claimant's intellectual impairment began during developmental period where she repeated fourth grade, received poor grades, and did not attend high school; and where medical consultant found no evidence that claimant's conditions had deteriorated over time).

Plaintiff raises two arguments directed to the ALJ's determination as to Listing 12.05C. First, plaintiff contends that the ALJ should have developed the record further before rejecting as uncorroborated plaintiff's allegation that she had undergone special education. (See Jt Stip at 8-9.) The Court rejects this contention. The ALJ gave plaintiff and her counsel ample opportunities to submit additional evidence supportive of her claim that she satisfied the requirements of Listing 12.05C. After plaintiff's counsel raised the Listing 12.05C issue at the initial hearing, the ALJ kept the record open for additional evidence and ordered plaintiff to undergo a psychological examination. (See AR 118-19; see also AR 111-12.) The ALJ also continued the hearing and, during the supplemental hearing, obtained confirmation from plaintiff's new counsel that the record was complete. (See AR 124.) This fulfilled the ALJ's duty to fully develop the record. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) ("The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record."); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (holding that ALJ satisfied any duty to develop record by requesting additional records from claimant and her counsel, and by keeping post-hearing record open for supplemental medical evidence).[5]

---

[5] The Court is mindful that in Garcia v. Commissioner of Social Sec., 768 F.3d 925, 932 (9th Cir. 2014), the Ninth Circuit held that when a claimant alleges an intellectual disability, an ALJ's duty to develop the record requires him to order a complete set of IQ scores because such evidence is necessary to assess intellectual disability. Here, consistent with Garcia, the ALJ ordered plaintiff to undergo a

      The Court also notes that, even if school records corroborating plaintiff's testimony that she underwent special education had been obtained, such evidence would not necessarily have been sufficient to show that she had adaptive functioning deficits before the age of 22, especially since plaintiff graduated from high school. See Peterson v. Commissioner of Social Sec., 552 Fed. Appx. 533, 540 (6th Cir. 2014) ("[N]either circumstantial evidence such as school records nor a history of special education combined with an adult IQ score are necessarily enough to demonstrate that a claimant had adaptive functioning deficits before age twenty-two."); Hickel v. Commissioner of Social Sec., 539 Fed. Appx. 980, 984-85 (11th Cir. 2013) (upholding ALJ's determination that claimant did not have deficits in adaptive functioning where claimant "reported that she was in special education classes while in school, [but] she graduated from high school").

      Second, plaintiff contends that the ALJ's listings determination was inadequate because it was based only on a "boilerplate" finding. (See Jt Stip at 9-11.) The Court also rejects this contention. The ALJ specifically referenced Listing 12.05C, discussed the relevant evidence throughout her opinion, and clearly explained her determination that plaintiff had not satisfied the specific requirements of that listing. (See AR 13, 15, 19.) That was sufficient. See Lewis v. Apfel, 236 F.3d 503, 513 (9th Cir. 2001) (ALJ's listings determination was adequate where he "discussed and evaluated evidence supporting his conclusion"); Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) ("It is unnecessary to require the [Commissioner], as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments" where there were specific findings supporting the conclusion); cf. Thresher v. Astrue, 283 Fed. Appx. 473, 475 (9th Cir. 2008) (ALJ's listings determination was inadequate where she failed to reference Listing 12.05C, making

---

psychological examination that included complete IQ testing. (See AR 119; see also AR 475-80.)

it "unclear whether the ALJ came to grips with the specific requirements of that section when she issued her decision").

*******************

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED: December 12, 2014

/s/ Robert N. Block
_____
ROBERT N. BLOCK
UNITED STATES MAGISTRATE JUDGE